WILLIAM G. BARBER, APPELLANT, V. CHARLES W. BRYAN, GOVERNOR, ET AL., APPELLEES.

FILED JULY 19, 1932. No. 28353.

*E. C. Finlay* and *Robert M. Cordill,* for appellant.

*C. A. Sorensen, Attorney General,* and *L. Ross Newkirk,* contra.

Heard before GOSS, C. J., ROSE, DEAN, EBERLY and DAY, JJ., and DICKSON and TEWELL, District Judges.

ROSE, J.

This is a controversy over unpaid assessments aggregating $7,215.06, which the department of trade and commerce levied at different times in favor of the bank guaranty and final settlement funds against the Bank of Florence while it was conducting a commercial banking business at Omaha under a charter from the state.

When insolvent May 9, 1930, the bank was closed by the department of trade and commerce after the assessments were levied, but it was never in charge of a receiver for purposes of liquidation. By virtue of a contract between creditors and reorganizers for the reopening of the bank when restored to solvency, it was regularly reopened for general banking June 21, 1930, under new management with the approval of the department of trade and commerce. As indemnity against the unpaid guaranty fund assessments, the reorganized bank, as a prerequisite to reopening, was required to enter and maintain on its books a reserve of $7,215.06, a fund created from assets in possession of the bank when reorganized.

Under the reorganization agreement the depositors and unsecured creditors devoted 60 per cent. of their respective claims to the purchasing of slow, doubtful and worthless bank assets which were assigned or transferred to trustees for the benefit of the purchasers. The trustees were charged with the duty of liquidating the purchased assets and of distributing the net proceeds to the beneficiaries of the trust. The remainder of the claims for deposits and unsecured credits, or 40 per cent., were held by depositors and unsecured creditors as unpaid obligations of the reorganized bank. To the extent of 60 per cent. of each deposit and of each unsecured claim a trust certificate of the bank was issued to each depositor and to each unsecured creditor. William G. Barber, plaintiff, received a trust certificate for $935.65 and brought suit for himself and for all other certificate holders.

The Bank of Florence and the officers who control the department of trade and commerce and who are custodians of the bank guaranty and final settlement funds are defendants.

Plaintiff prayed for a decree that the reserve fund of $7,215.06 in possession of the reorganized bank does not belong to the state guaranty fund or to the final settlement fund; that neither the bank nor plaintiff nor any other creditor became liable for the assessments aggregating $7,215.06; that the reserve fund and the assets comprising it belong to plaintiff and other depositors and creditors who are certificate holders and beneficiaries of the trust in their favor; that the officers in control of the department of trade and commerce be enjoined from collecting the assessments.

The state officers sued by plaintiff did not challenge the petition by answer. The reorganized Bank of Florence, defendant, denied liability to the bank guaranty and final settlement funds for the assessments, but prayed, in the event of a judicial decision to the contrary, for permission to pay the assessments with the reserve fund or assets retained in its possession for that purpose.

The district court heard the controversy on the pleadings, the reorganization contract, the facts stipulated by the parties and the arguments of counsel. From a judgment dismissing plaintiff's petition and declaring the assessments valid obligations of the reorganized bank, which the latter is entitled to discharge with assets retained in its possession, plaintiff appealed.

In presenting assignments of error, plaintiff argued that reorganization pursuant to statute is a step in the liquidation of an insolvent bank and does not make the new bank liable for obligations of the old; that the officers of the department of trade and commerce permitted the bank to remain open with knowledge of its insolvency long before the assessments were levied, without any entry of the statutory reserve on the bank books, thus creating an estoppel to enforce collections; that the assessments were void because they were illegally assessed against an insolvent bank, solvent banks only being subject to such burdens; that in exacting payment of assessments from funds of depositors, there was a futile departure from the sole statutory method of making collections from solvent banks; that the agencies of the state disregarded a reorganization agreement protecting the right of depositors to legal set-offs; that the statutory right of depositors to the first lien on assets is superior to claims of the guaranty and final settlement funds for assessments; that the reorganized bank did not obligate itself to pay the assessments; that there is a mutual mistake to be corrected, if the reorganization contract made provision for payment of assessments a prerequisite to the opening of the bank; that enforcement of the assessments would be an improper exercise of police power, a violation of statute, a prohibited class distinction, a taking of private property without due process of law and without just compensation, a denial of the equal protection of the laws, a confiscation of property—all in violation of constitutional inhibitions.

These propositions were argued by plaintiff at great length in his brief and the principal questions were also presented orally at the bar, but all may be determined by the solution of a few questions narrowed to the controlling factors.

The position that the insolvent bank was liquidated and a new bank created without incurring obligations of the old is untenable. Before and after the reorganization there was only one corporation. The change in capitalization, officers and management did not create a new corporation. The right to conduct a banking business depended on a charter from the state. There was only one charter and the reorganized bank operated under it. There was no other foundation for the reorganization or operation of a bank. The name was not changed. The identity of the corporation remained the same. The insolvent bank survived for liquidation or reorganization. The power to wind up its affairs and thus terminate its existence was not exercised. All interested persons united pursuant to statute in a reorganization plan and contract approved by the department of trade and commerce, the administrative body having supervisory control of state banks. The statute authorizing liquidation of insolvent banks contains the following provisions:

"If the secretary of the department of trade and commerce with a view of restoring the solvency of any bank of which the department has taken charge pursuant to law shall approve a reorganization plan entered into between depositors and unsecured creditors representing eighty-five per cent. or more of the total amount of deposits and unsecured claims of such bank on the one hand and the bank or reorganizers thereof on the other, then and in such case all other depositors and unsecured creditors shall be held to be subject to such agreement to the same extent and with the same effect as if they had joined in the execution thereof, and their claims shall be treated in all respects as if they had joined in the execution of such articles of reorganization, in the event of

restoration of such bank to solvency and the reopening of the same for business." Comp. St. 1929, sec. 8-181.

Reorganization and restoration to solvency were thus authorized. Liquidation and dissolution of the insolvent bank were avoided. The reorganizers and creditors pursued the statutory course and their action was regularly approved and the bank reopened. The executed contract recites in the preamble that "the undersigned depositors and unsecured creditors," of whom plaintiff is one, "believe it is to their advantage to have said bank reopened without the appointment of a receiver and liquidation as provided by law." The parties therefore understood reorganization was not liquidation in the sense that dissolution of the insolvent corporation would be effected. The reorganizers agreed to charge off the capital stock and other items aggregating $24,877.31 and pay into the bank $25,000 for capital stock and provide a surplus of $5,000. As narrated in the opening statement of the case herein, the creditors by contract devoted 60 per cent. of their respective claims against the insolvent bank to the purchasing of slow, doubtful and worthless assets to be held by trustees for liquidation, and retained the remainder or 40 per cent. as unpaid obligations of the reorganized bank. Among other provisions the reorganization contract contains the following:

"It is further agreed that the said reorganized bank shall for a period of twelve months from the date of reopening of the said bank own and maintain a first prior lien on all of the assets for the purpose of securing the notes accepted by the subscribers of the new capital as assets in the reorganized bank, and to indemnify the reorganized bank against possible concealed liabilities; and to cover special guaranty fund assessments levied and now in litigation of about $7,215.06, and also to cover taxes and unsecured bills of about $1,500, provided however that when, under the said lien, all items listed above shall have been paid or satisfied, the excess or balance of assets remaining at the end of the said twelve months

shall be fully surrendered to the trustee or trustees appointed by the depositors' committee, representing the original depositors, and the said lien right be thereafter waived and surrendered. It is expressly understood that the depositors in agreeing to the above reductions of their deposits reserve the right to all legal offsets to the same extent as if said reductions had not been made."

In addition to the contractual terms quoted, the stipulation of facts shows that a bank-book entry of the reserve fund created from bank assets retained by the reorganized bank was a prerequisite to the opening thereof. The true import of the contract as a whole and of the stipulation of facts is that the reorganized bank assumed liability for the assessments and that the depositors and unsecured creditors agreed to a lien on retained assets for the creation of the reserve fund.

The validity of the assessments was implied, if not affirmatively shown, by mutual agreement of all parties to the reorganization. The assessments were levied before the bank was temporarily closed. They were made when it was openly receiving deposits and otherwise transacting a general banking business and when its stockholders and officers were free to restore solvency without any action of creditors or of the department of trade and commerce. During that period the bank should not be considered solvent for the purpose of receiving deposits and insolvent for the purpose of assessments in favor of the bank guaranty and final settlement funds. The validity of the assessments was in litigation and consequently they were not enforced as levied, as shown by the stipulation of facts herein and by the opinions in *Abie State Bank v. Weaver*, 119 Neb. 153; 282 U. S. 765. Pending litigation the bank books failed to show the assessments as charges against the Bank of Florence, but the proper entry was made after the litigation ended. Viewed from any standpoint, there was nothing to prevent the parties to the reorganization contract from making payment of the assessments a condition of reopening

the bank when restored to solvency. When the *Abie* case was decided, the writer hereof was of the opinion that the entire bank guaranty law, through disastrous changes in economic conditions, had lost its character as a public measure and had become a private menace to solvent banks without any protection to their depositors, and then caused confiscation of private property of solvent banks to the extent of the assessments for the sole benefit of private depositors in insolvent banks that had been closed for liquidation. The dissent is noted in *Abie State Bank v. Weaver*, 119 Neb. 160. The majority of the state supreme court and the supreme court of the United States, however, did not disturb the assessments against the Bank of Florence. Provision for payment was made in the reorganization contract.

The question relating to the priority of claims or liens does not arise in the present case, because the insolvent bank was reorganized and opened after the creditors and the reorganizers adjusted claims and liens by a contract authorized by law and approved by the department of trade and commerce.

The facts and conditions with which the contracting parties dealt in entering into the reorganization plan were known in advance and the evidence does not prove a mutual mistake entitling plaintiff to relief.

A critical examination of the statute, the pleadings, the reorganization plan, the contract, the stipulation of facts, the approval of the department of trade and commerce and the argument and citations of counsel leads to the conclusion that the pleas interposed by plaintiff for relief were defeated by the contract into which all the interested persons entered with full knowledge of the pertinent facts.

AFFIRMED.