AMERICAN STATE SAVINGS BANK OF LANSING *v.*
CITY OF LANSING.

1. BANKS AND BANKING—ESCROWED BONDS—PROFITS—TRUST FUND —REORGANIZATION.

Under depositors' agreement to enable bank to reorganize and continue as a going concern, appreciation of value of bonds which had been deposited in escrow as security for deposit of public funds in bank prior to receivership and reorganization *held*, to constitute profits from operation of bank under reorganization and, therefore, to bear relation to trust fund in which 50 per cent. of deposits were placed for purpose of liquidating questionable or undesirable assets and to which fund net profits accruing from operation of bank were to be credited (Act No. 8, Pub. Acts 1932 [1st Ex. Sess.]).

2. SAME—REORGANIZATION—PUBLIC FUNDS—BONDS—REPURCHASE.

Under bank reorganization plan and agreements relative to deposit of city funds in bank and escrowed bonds securing such deposit, reorganized bank *held*, entitled! to exercise option to repurchase such bonds at given price (Act No. 8, Pub. Acts 1932 [1st Ex. Sess.]).

3. SAME—FINANCIAL INTEREST OF CITY OFFICIALS IN REORGANIZATION —ESTOPPEL.

City board asserting rights to bonds it received pursuant to agreement enabling city fund depository bank to reorganize *held*, estopped to claim agreement void because certain city officials, including board and council members, were financially interested in bank reorganization (Act No. 8, Pub. Acts 1932 [1st Ex. Sess.]; Lansing Charter, § 53).

4. CONTRACTS—CONSIDERATION—EVIDENCE.

Consideration for a written contract, if impugned, may be shown *aliter* the writing.

5. BANKS AND BANKING—CONTRACTS—CONSIDERATION—AGREEMENT RELATIVE TO BANK REORGANIZATION—MUNICIPAL CORPORATIONS.

Agreement between city board and bank receiver relative to reorganization trust fund as to 50 per cent. of city's deposit which gave city an advantageous change of status in control and disposition of escrow depository security *held*, not void for want of consideration.

6. SAME—PUBLIC FUND DEPOSITOR'S AGREEMENT—PROPRIETY.

Agreement between city board and bank receiver, ratified by city council, relative to deposit in bank secured by directors' bond and escrowed bonds whereby city board obtained temporary ownership of escrowed bonds and trusteed 50 per cent. of its deposit *held*, not a devotion of public funds to an extralegal use and purpose but a salvage of such funds commensurate with circumstances (Act No. 8, Pub. Acts 1932 [1st Ex. Sess.]).

7. SAME—REORGANIZATION—RETENTION OF IDENTITY—PARTIES.

Bank which never changed identity, was not issued a new charter and became its own liquidator on reorganization with consent of city and other depositors *held*, entitled to exercise option to repurchase bonds transferred to city board pursuant to agreement with bank receiver, the bank, as reorganized, not being a third party beneficiary (Act No. 8, Pub. Acts 1932 [1st Ex. Sess.]).

Appeal from Ingham; Lamb (Fred S.), J., presiding. Submitted April 17, 1936. (Docket No. 121, Calendar No. 38,902.) Decided June 16, 1936.

Bill by American State Savings Bank of Lansing against City of Lansing, a municipal corporation, for the construction of a written instrument and other relief. From decree rendered, defendant appeals. Affirmed.

*Foster & Cameron,* for plaintiff.

*Joseph W. Planck,* City Attorney *(Barnard Pierce,* of counsel), for defendant.

WIEST, J. This is an appeal by defendant from a decree adjudging rights under a written agreement.

The American State Savings Bank of Lansing, previous to reorganization under the provisions of Act No. 8, Pub. Acts 1932 (1st Ex. Sess.), was the duly designated depository of the funds of the board of water and electric light commissioners of the city of Lansing and, as security, gave a bond, signed by its directors and, as additional security, placed in escrow, with the Central Trust Company of Lansing, negotiable bonds, qualified assets of the commercial department of the bank, some of which were so placed the day before the bank closed.

The bank closed, a receiver was appointed and efforts made toward reorganization under the mentioned statute. The city, by action of its common council, joined in an agreement of depositors to "enable the American State Savings Bank to reorganize and continue as a going bank."

The depositors' agreement contained the following:

"I, the undersigned, do agree, in order to enable the American State Savings Bank to reorganize and

continue as a going bank, that 50 per cent. of the amount of my deposit in said bank shall be deducted from my balance as shown by the books of said bank, and shall be allocated to a trust fund for the purpose of liquidating any assets transferred to such fund which may be considered questionable or undesir-able.''

Also:

''That all net profits accruing from the operation of the bank during the period that this agreement is in effect shall be credited to the trust fund and likewise any losses sustained by the bank during that period, shall be chargeable to the trust fund.''

The bonds placed in escrow were not questionable nor undesirable, and appreciation thereof, in value, constituted profits accruing from operation under the reorganization and, therefore, bore relation to the trust fund.

In the course of reorganization of the bank, and on the 28th day of December, 1932, the receiver, under authorization by the court, and the city board of water and electric light commissioners entered into an agreement, with reference to the negotiable bonds held in escrow, subsequently approved by action of the common council, the parts of which material to the issues here involved being:

''Whereas, the city deposited funds with said bank and at the date of its closing on December 21, 1931, had on deposit therein the sum of $426,167.26, which included interest accrued to said date, and in which sum the board of water and electric light commissioners had an interest, and * * *

''Whereas, the city council of the city of Lansing on December 19, 1932, duly adopted the following resolution:

'' 'That the mayor and city clerk be and are hereby authorized and directed to sign the so-called ''depositor's agreement'' with the American State Savings Bank depositors committee subject to the following reservations:

" 'That the city retain the directors' depository bond heretofore filed.

" 'Also that the water and electric light board take over the additional municipal bonds filed as additional securities, crediting the city with the market value therefor; further, subject to the approval of the water and electric light board.'

"Whereas, the board of water and electric light commissioners at a special meeting held December 23, 1932, adopted the following resolution:

" 'Resolved that the board of water and electric light commissioners concur in resolution passed by the city council December 19, 1932, except that bonds now in deposit in trust be turned over to the board of water and electric light commissioners at a value of $200,000; and that the liability of the bank be reduced by $200,000, plus cash on hand at Central Trust Company, plus interest as collected on coupons due January 1st; and that proper officials be empowered to sign depositor's agreement in behalf of the board.' * * *

"12. Now therefore, it is mutually agreed by the board of water and electric light commissioners of the city of Lansing, and Carl A. Fors, receiver of the American State Savings Bank, for themselves, their successors and assigns, as follows:

"a. The receiver relinquishes to the city of Lansing all right and claim to the bonds and the sum of $24,321.52 and all moneys collected on said bonds before or during January, 1933, now remaining in the hands of said trustee.

"b. It is mutually agreed that the present value of said bonds is $200,000, a list of said bonds with their par value and their appraised value at the date hereof being attached hereto and marked exhibit 'A.' * * *

"h. The reorganized bank shall have the unqualified right at any time during the period of five years to repurchase all of said bonds for the amount of $200,000 if all of the bonds remain in the hands of said board, or to repurchase all of the bonds remaining in the hands of said board by paying the sum of $200,000, less credits previously given on said amount.

"i. If any bonds remain in the hands of said board at the end of said five-year period an appraisal is to be made thereof by mutual agreement

at their then market value, and if the value of said bonds at said time, together with the amounts credited upon the said amount of $200,000 is less than the sum of $200,000, the said loss is that of the board.

"j. If the market value of said bonds, together with the credits already made to said account, is in excess of the said sum of $200,000, the excess is to be applied upon the amount due the said board from the trust fund under the depositor's agreement, and if the total excess, together with the credits given is more than the sum of $200,000, plus the balance due from the trust fund under the depositor's agreement, said excess is to be immediately paid over to said bank for the benefit of said trust fund."

On January 3, 1933, the common council of the city resolved that:

"Whereas, the board of water and electric light commissioners has entered into an agreement with said receiver, Carl A. Fors, relative to said bonds so deposited with the Central Trust Company, whereby said board of water and electric light commissioners agreed to take over said bonds so held in trust by said trust company, and which said agreement is now on file in the receivership of said bank and which said agreement has been approved by the circuit court for the county of Ingham in said receivership, and the said Carl A. Fors, as said receiver, was authorized to enter into said agreement and sign the same;

"Now, therefore, be it resolved, that the Central Trust Company are hereby authorized and directed to deliver the bonds specified and described in said agreement between the board of water and electric light commissioners and the receiver of said bank, Carl A. Fors, and that upon so doing the board of water and electric light commissioners be authorized to receipt therefor, relieving said trust company from further liability in respect thereto."

This ratified the agreement therein mentioned.

The bank was reorganized and the receiver discharged, the negotiable bonds in suit appreciated in value and, under the mentioned agreement, the reorganized bank claimed right to have surrender thereof and, upon refusal of the city to make such surrender, filed the bill herein to have right thereto determined.

It is stated in the brief for defendant city that:

"From time to time bonds were sold and the board has now received the sum of $239,795.84. The remaining bonds are of the present value of $60,000 to $70,000."

The city claims that, under charter provisions, the mentioned agreement between the board of water and electric light commissioners and the receiver was void; also that it was with the receiver of the old bank, and the reorganized bank cannot make any claim of right thereunder, and the agreement as a whole conferred no such right as claimed by plaintiff.

Plaintiff claims right to have the remaining bonds and all cash, received by the city above $200,000, under said paragraph "h."

It is the contention of counsel for the city that a construction of the entire agreement, according to its fair, reasonable and proper meaning, is to the effect that the defendant city is entitled to have all of the proceeds from all of the bonds.

This reasoning is predicated upon the assumption that subparagraph "h" is dependent upon its associates "i" and "j."

We think the subparagraphs speak of alternative option rights. Clearly, if the city was to have all of the securities, and likewise participate in the ultimate distribution of the assets allocated to the trust

fund under the plan of reorganization, few words could have so stated, but then we might have the more difficult subject of unlawful preference, under the eleventh hour deposit of additional bonds.

In substance the agreement vested ownership of the bonds in the city; fixed their value at $200,000; credited that sum, together with cash received, on the bonds by the Central Trust Company and coupons paid during January, 1933, on the indebtedness of the bank to the city; then, in view of reorganization of the bank, the city was not to dispose of the bonds during a period of five years, unless right to repurchase was accorded the reorganized bank; and if so sold the amount was to be credited against the amount of $200,000; the interest on the bonds to belong to the board; accorded the reorganized bank the right of option to repurchase the bonds at any time within the five-year period for $200,000; if all are on hand, or such as are on hand, less credits for sales made. These provisions fixed rights and privileges within the five-year period. After the five-year period different rights and privileges, in substance, were provided as follows: the bonds remaining in the hands of the board to be appraised at their market value and if such value, together with sums received, should not equal $200,000, the loss would be that of the board, but if such market value and sums received should exceed $200,000 then the excess to be applied upon the amount coming to the board from the trust fund depositors' agreement, and if the total excess was more than that it should be paid into the depositors' trust fund.

Plaintiff exercised the option right within the five-year period, and we cannot construe the agreement to entitle the city to refuse the right to repurchase and to remit plaintiff to the alternative remedy.

Counsel for the city direct attention to subparagraph ''a,'' section 12 of the agreement, which provides: ''the receiver relinquishes to the city of Lansing all right and claim to the bonds and the sum of $24,321.52 and all moneys collected on said bonds before or during January, 1933, now remaining in the hands of said trustee,'' and contends that this release to the city, standing by itself, negatives the claimed right by way of option to repurchase under subdivision ''h'' in the same paragraph.

Without the release the bonds would have remained pledged as security, but with the release the city was in position to grant the option to repurchase. Subdivisions ''a'' and ''h'' are consistent for the one furnishes the reason for the other.

''Is the agreement void because certain city officials were financially interested, contrary to section 53 of the city charter?''

That section provides:

''No member of the city council, nor any person holding any elective or appointive office under the city government shall be interested in any contract with the city.''

Two members of the board of water and electric light commissioners were directors of the old bank, had signed the depository bond which was still effective; one was president of that board and, as such, signed the agreement, and the other was a member of the reorganization committee of the bank. The member of the city council who introduced the resolution, adopted by that body on January 3, 1933, authorizing delivery of the depository security by the Central Trust Company to the board in pursuance of the agreement, was a heavy stockholder in the old bank, had paid his stock assessment and was a member of the reorganization committee and,

therefore, entitled to paid-up shares in the reorganized bank.

The position taken in behalf of the city in this respect is anomalous in that it asserts accrued rights under an agreement it contends was void. The city has not repudiated the agreement but has accepted its benefits and insists on rights thereunder and cannot, by reason of other interests affected, restore former status, and is in no position now to reach for and raise the bar in order to keep what has come in, regardless of earmarks thereon.

Was the agreement wholly without consideration? The city claims that no valid consideration is recited in the agreement. Consideration, if impugned, may be shown *aliter* the writing. We need but say that the agreement brought the city depositor an advantageous change of status, relative to control and disposition of the escrow depository security.

Did the agreement devote public funds to "an extra-legal use and purpose?"

It was a case of salvage of public funds commensurate with circumstances and not a forbidden use of public funds.

May the reorganized bank maintain this suit?

Defendant invokes the rule respecting agreements for the benefit of a third party, supplemented by the fact that the third party (the reorganized bank) was not then owner *in præsenti* but, if at all, one *in futuro*. There are exceptions to the third party beneficiary rule as pointed out in *Bassett* v. *American Baptist Publication Society,* 215 Mich. 126 (15 A. L. R. 213), and *Claxton* v. *Margolis,* 248 Mich. 199. The very purpose of the agreement was to enable supplemental participation in the action taken by the city council and other depositors in behalf of reorganization of the bank. The plaintiff does

not stand in the relation of a third party beneficiary of the agreement. The bank never changed identity; no new charter was had or required; the bank became its own liquidator, by consent of defendant along with other depositors, and suit on the agreement is properly planted. See *In re Farmers' Exchange Bank of Toronto,* 55 S. D. 190 (225 N. W. 307); *Barber* v. *Bryan,* 123 Neb. 566 (243 N. W. 834); *First Trust Co. of Lincoln, Trustee,* v. *Exchange Bank,* 126 Neb. 856 (254 N. W. 569); *In re Burger's Estate, post,* 485.

The decree is affirmed, with costs to plaintiff.

NORTH, C. J., and FEAD, BUTZEL, BUSHNELL, EDWARD M. SHARPE, and TOY, JJ., concurred. POTTER, J., took no part in this decision.